**ARTHUR WITTY, Plaintiff**

v.

**OSBORNE HARVEY, d/b/a**
**Bandbox Laundry and Dry Cleaners, Defendant**

Civil No. 575-1969

Municipal Court of the Virgin Islands
Div. of St. Thomas and St. John

October 29, 1969

McGOWAN, LOUD, CAMPBELL and DENNENBERG (GERALD
 DENNENBERG, ESQ.), *for the plaintiff*

GRUNERT and STOUT (RICHARD E. GRUNERT, ESQ.),
 *for the defendant*

MICHAEL, *Municipal Judge*

OPINION

This case presents the interpretation of certain provisions of a lease entered into on the 24th day of September 1965 between plaintiff-Landlord and defendant-Tenant, which provisions the Landlord contends the Tenant has breached and as a consequence prays for a Preliminary Injunction, as provided for in the lease.

The matter came on for hearing on July 15, September 16 and 30, 1969. Gerald Dennenberg, Esq., of the firm of McGowan, Loud, Campbell and Dennenberg appeared for the plaintiff and Richard E. Grunert, Esq., of the firm of Grunert and Stout appeared for the defendant.

The salient portions of the lease involved in this action are found below, numbered 1 et seq.

## FINDINGS OF FACT

1. That under provisions of the Lease herein numbered 1 for convenience, the plaintiff, Arthur Witty, a Lessee under a certain master lease dated September 27, 1962, covering the premises described as Parcel 2-1 of Estate Charlotte Amalie, comprising of an area of 1.69 U.S. acres, leased to Osborne Harvey d/b/a Bandbox Laundry and Dry Cleaning, certain premises, which lease is subject to all of the covenants, conditions and restrictions of a master lease.

2. That under paragraph numbered 2, the parties agreed upon Premises (Bay No. 9B), location, term and rental.

3. That under paragraph numbered 3 Tenant agreed to comply, at his own expense, with all requirements of law and regulations, etc., but shall not be required to make any expenditures to comply therewith unless necessitated by his fault or by his use of the premises.

---

1. Landlord, Arthur L. Witty, hereby gives notice to Tenant, Osborne Harvey d/b/a Bandbox Laundry and Dry Cleaning, that Landlord, Arthur L. Witty, is the Lessee under a certain master lease dated September 27, 1962 covering the premises described as Parcel 2-1 of Estate Charlotte Amalie from which the herein leased premises have been subdivided; and that the within lease is subject to all of the covenants, conditions and restrictions of the said master lease. Recorded in Book 6-K at page 344.
2. Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord, Bay No. 9B within the Fort Mylner Shopping Center located on Parcel No. 2-1-C Estate Charlotte Amalie, St. Thomas, for a term of ten (10) years, subject to renewal, at Tenant's option, for an additional term of five (5) years at a rental of One Hundred and Fifty Dollars ($150.00) per month up to $30,000.00 gross sales; and thereafter at the rate of $150.00 per month plus 3% of the gross sales above $30,000.00. In order to verify the sum due and owing as rental, Tenant agrees to keep accurate books of account of all sales on the leased premises, and upon request to permit examination of said books by Landlord or his duly authorized representative, once every six months at which time an adjustment of rent due, if any, will be made, and Tenant will pay Landlord such sum as is due, if any.
3. Tenant shall, at Tenant's own expense, comply with all requirements of law and with all regulations and orders of any government or governmental authority affecting the premises, but Tenant shall not be required to make any expenditures to comply therewith unless necessitated by Tenant's fault or by Tenant's use of the premises.

4. That under paragraph numbered 4 the parties agreed as to defendant's duties regarding compliance with regulations affecting the use and occupancy of the Premises and plaintiff's rights if Tenant should fail to comply.

5. That under paragraph numbered 5 Tenant was given the exclusive right to conduct the business of a laundromat and dry cleaning and Tenant agreed not to conduct any other business on the leased Premises. Also, it was agreed that Landlord shall not be required to supply water for the laundromat and Tenant shall not use any water for the laundromat from Landlord's cistern.

5(a). That by subsequent agreement Tenant, not being permitted by specific provisions of the Lease to use any water for the laundromat from Landlord's cistern (Findings No. 5), furnished his own water, which was permitted to be stored in Landlord's cistern.

6. That paragraph numbered 6 (Paragraph No. 3 of the Lease), by which Tenant covenants that Landlord has not represented or warranted that the Premises are substantially or otherwise adaptable or suitable for the purposes permitted by the lease or otherwise, and that he has

---

4. Tenant will not at any time use or occupy the Premises otherwise than as permitted by the existing or any future zoning, planning, or other laws, regulations, or governmental orders affecting the use or occupancy of the Premises. If any governmental authority at any time declares that the Premises are being used contrary to any such law or regulation, Tenant on five (5) days written notice from Landlord shall immediately discontinue such use after such notice, Landlord shall have the right to terminate this lease as if such notice were a notice of default under Paragraph 10 of this lease.

5. Subject to the foregoing, Tenant may use and occupy the premises and is hereby given the exclusive right to conduct the business of a laundromat and dry cleaning, and to use the premises as a laundry and dry cleaning depot. Landlord hereby binds himself, his heirs and assigns, not to permit another such business by any other tenant of Landlord on any portion of Parcel No. 2-1 of Estate Charlotte Amalie and Tenant shall not conduct any other business on the leased premise. It is understood and agreed that Landlord shall not be required to supply water for the laundromat; and that Tenant shall not use any water for the laundromat from Landlord's cistern on the premises.

6. Tenant covenants that Landlord has not represented or warranted that the Premises are substantially or otherwise adaptable or suitable for use or occupation by Tenant for the purposes permitted by this lease or

399

made an examination thereof, etc., is the same as paragraph 4 of the master lease.

6(a). That the same provision, as has been called to the attention of the parties by the court (though not in evidence but of public record), is found in Lease dated January 26, 1963 to Island Drug and Gift Shop, Inc., recorded February 13, 1963 at Vol. 6N, p. 267, No. 573; in Lease dated April 23, 1963 to Carib Gas Corporation, recorded April 30, 1963 at Vol. 6Q, p. 123, No. 3028; and in Lease dated April 17, 1964 to Robert Heggie and Jack Lachelle, recorded April 29, 1964, at Vol. 7C, p. 386, No. 1617; all tenants of plaintiff at the Fort Mylner Shopping Center.

7. That under paragraph numbered 7 (Paragraph 4 of the Lease), Tenant agreed that at his own expense, he will maintain the Premises and all improvements, additions and alterations in good repair, and will make, when required, all repairs in and about the Premises, necessary to keep the Premises and all improvements, additions and alterations thereto in such condition.

8. That under paragraph numbered 8, the Landlord is entitled to an injunction for violation or attempted or threatened violation or breach by Tenant.

---

otherwise. Tenant has made an examination and investigation of the Premises and takes them in the condition they are now in and subject to existing and future zoning, planning, and other laws, regulations, and governmental orders affecting the use or occupancy of the Premises, and Tenant's entry into possession of the Premises hereunder shall be conclusive evidence, as against Tenant, that the Premises were in good and satisfactory condition at the time of entry.

7. Tenant will, at Tenant's own expense, maintain the Premises and all improvements, additions, and alterations thereto in good repair and in clean, neat, and good order and condition, and will make, when and as required, all repairs in and about the Premises necessary to keep the Premises and all improvements, additions, and alterations thereto in such condition. . . .

8. In addition to all other remedies granted herein to Landlord for violation or attempted or threatened violation or breach by Tenant of the covenants, conditions, or restrictions of this lease relating to the use or occupation

9. That the water used in Tenant's business as a laundromat, together with toilet and other wastes, drains through the drain found in the Premises leased to Tenant into the central sewage system furnished by the Landlord to all his tenants and under his control, the same as toilet and other wastes drain from premises occupied by other tenants of the Landlord.

10. That by letter dated January 18, 1968 complaint was made by the Director of the Bureau of Environmental Sanitation to the Landlord that the Sewage Treatment plant is overloaded, is detrimental to health, and requested that he "provide adequate facilities to treat 10,000 gallons of sewage per day, estimated as follows:

| | |
|---|---:|
| "Coin-Operated Laundry | 6000 |
| Carnival Inn with expansion | 1500 |
| Shell Oil | 500 |
| Balance of Shopping Center | 1500 |
| | 9500 |

"In addition the present plant must receive adequate maintenance."

11. That due to the overloading and lack of adequate maintenance of the sewage plant, the property of Landlord and under his control, an improper effluent flows from the sewage plant into "Turpentine Run", the adjoining property of one S. E. Harthman.

12. That on January 1969 the said S. E. Harthman wrote to the Landlord complaining about the flow of sewage effluent from the "Fort Mylner Shopping Center," which prevents him from using his property, and requested Landlord to take immediate action to solve the problem permanently.

---

of the Premises or otherwise, Landlord, at his election, shall be entitled to obtain an injunction enjoining Tenant from such violation or such attempted or threatened violation or breach by Tenant.

13. That on March 31, 1969 Landlord's counsel wrote to Tenant at the request of Landlord, advising him that he had received complaints of sewage overflow apparently emanating from Fort Mylner Shopping Center and that he believes the cause of the overflow is the result of the great quantities of effluent which his laundry empties into the sewage system located at Fort Mylner which overtaxes the system's capacity, and requested him to make immediate arrangements for disposal of his effluent other than into the sewage plant located at Fort Mylner.

14. That 19 VIC [V.I.R.&R.] 1404–77 provides as follows:

"No kitchen wastes, laundry water, sink water or toilet wastes shall be allowed to discharge or flow into any gutter, street, roadway or public place, nor shall such material discharge onto any private property so as to create a nuisance or condition detrimental to health.

"No drainage from a sewage disposal system shall be discharged into a street gutter or onto the surface of the ground. No effluent from any sewage disposal system shall discharge into any tributary of a public water supply."

## DISCUSSION

From all of the above, the question before the court is whether the defendant has in the conduct of his business as a laundromat in the premises leased to him, "Bay No. 9B within the Fort Mylner Shopping Center", breached any of the conditions, covenants or restrictions contained in the master lease or the lease entered into between him and the plaintiff.

In the master lease the plaintiff in paragraph 4, as cited above, covenants that *his* Landlord did not represent or warrant that the "Premises" were substantially or otherwise adaptable or suitable for use or occupation by him for the purposes permitted by the Lease, which use was for a "retail shopping center", etc.

Evidently, the "Premises" referred to in the master lease must have been understood by the parties thereto that the whole area of "1.69 U.S. acres" was being considered.

Analogously, when plaintiff sublet to defendant a portion of that property for use as a laundromat, and defendant covenanted (the same as the other tenants whose lease contained the same provision as the master lease) that "Landlord has not represented or warranted that the 'Premises' are substantially or otherwise adaptable or suitable for use or occupation by Tenant for the purposes permitted by the lease or otherwise", it is crystal clear that the provision covered only the Premises leased to each individually, as contained in their Lease, and not portions which the Landlord reserved to himself and/or the use of other tenants. To say that the "Premises" in each case meant the entire 1.69 acre plot leased to the plaintiff in the master lease and/or the several improvements thereon made by the plaintiff and leased to other tenants would be giving the word "Premises" as used in the leases given to the tenants an interpretation which neither of the parties intended nor could have intended.

As was stated in Larsen v. City of Minneapolis, 114 N.E.2d 68, 71, "The word 'premises', the purport of which is disputed by the parties, may have various legal meanings depending upon context and situation. Under the particular circumstances of this case, we think the trial court correctly construed the term to apply to *the space the tenant occupied in the conduct of his business* as identified by street address, with the accompanying obligation to keep the sidewalk in front and along the store space cleared of ice, snow, and other obstructions. *The lease makes no reference to the boulevard or other areas used in common by the landlord's tenants and their customers.*" (Italics supplied.)

In the case at bar, nowhere is there any provision which prohibits Tenant from using the sewer system provided by the plaintiff to all tenants. Neither was there any provision that the defendant was required to furnish his own disposal system or to maintain the one furnished by the plaintiff. Where plaintiff did not wish the defendant to share equally the services he was rendering to other tenants, such as water, he specifically so provided in the lease, by forbidding him using water for the laundromat from "Landlord's cistern."

To further show that the word "Premises" used in the lease by the plaintiff meant and was understood by the parties to be that portion leased to the defendant wherein the laundromat is located, paragraph No. 7 of the lease contains the following:

"On the last day of the term of this lease, whether terminated by expiration of the full original term or the full extended term hereof or terminated earlier in accordance with any provision of this lease, Tenant will peaceably and quietly leave and surrender the Premises to the Landlord in good repair and in clean, neat, and good order and condition. Unless Landlord has elected in accordance with the provisions of this lease that improvements, additions, and alterations to the Premises shall not become the property of Landlord, the Premises to be surrendered shall be deemed to include all such improvements, additions, and alterations; but if landlord does so elect, *Tenant will remove all improvements, additions and alterations and will restore the Premises to substantially the same condition as they were in when Tenant first took possession thereof."* (Italics supplied.)

Did Tenant take possession of Landlord's Sewage System so that he would have to "restore" it to "substantially the same condition as [it was] in when Tenant first took possession thereof?"

■ While the plaintiff is entitled to an injunction for violation or attempted or threatened violation or breach of the covenant, conditions or restrictions contained in

404

the lease, there has been no showing that the defendant has done any of those things.

There has been no evidence to the effect that the Premises leased to the Tenant, Bay 9B of the Fort Mylner Center, was not adaptable or suitable for use or occupation by Tenant as a Laundromat and Dry Cleaning establishment. To the contrary, the Landlord himself knew the Premises were adaptable and suitable for the purpose, his having provided in the lease whereby he would profit from increased business. (See paragraph of the lease herein numbered 2.)

Also, there has been no evidence that the use made of the "Premises" by the defendant, as the term is construed by the court to apply, is in violation of any law or regulation. Conversely, the evidence shows that the nuisance complained of and proscribed by 19 VIC [V.I.R. & R.] 1404-77, is the result of the sewage disposal system at Fort Mylner Shopping Center from which effluent is allowed to be discharged, and of which system Tenant has no control. While Tenant agreed to comply with all requirements of law and regulations, he is not required to comply unless necessitated by his fault or by his use of the premises. (See Paragraph No. 3 of Findings.)

The above Findings and Discussion being dispositive of the motion before the court for a preliminary injunction, it is not necessary to discuss the equities so extensively briefed by counsel for the parties.

Accordingly, the plaintiff's motion for a preliminary injunction will be denied.